IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) ) | Case No. 15 C 2881 |
| v. | ) ) | |
| KRAFT FOODS GROUP, INC. and MONDELĒZ GLOBAL LLC, | ) ) ) ) | |
| Defendants. | ) | |

**DEFENDANTS' RESPONSE TO CFTC'S SUGGESTION OF MOOTNESS**

The CFTC's Suggestion of Mootness, Dkt. No. 358, reflects the CFTC's mistaken view that the CFTC is exempt from the rule of law. It is not. The CFTC must follow lawful orders of this Court and may not benefit from its intentional violation of those orders, or its misconduct in inducing their issuance. When the CFTC violates orders of this Court, as it has here, it should be held responsible.

The CFTC entered into a settlement with Kraft and Mondelēz ("Defendants") in which Defendants agreed to pay $16 million to the CFTC. In exchange, Defendants obtained a release of all claims, thus limiting their liability to a sum certain; the CFTC agreed to forego the one-sided and unproven factual findings and conclusions of law it often includes in consent orders; and the CFTC agreed it would not make public statements about Defendants, the allegations at issue, and the resolution of the case. The agreement that "[n]either party shall make any public statement about this case other than to refer to the terms of this settlement agreement or public documents filed in this case," was effectuated in Paragraph 8 of this Court's Consent Order, Dkt. No. 310, which this Court entered at the request of the *parties*—not "at the Court's request," as the CFTC falsely represented in one of its recent statements. Less than two hours after the Court

issued the Consent Order, as part of a premeditated effort, the CFTC made public statements about the settlement that violated Paragraph 8 of the Court's judgment.

At Defendants' request, the Court initiated civil contempt proceedings. The possibility of finding the *Commissioners* in contempt ended when the Seventh Circuit granted a writ of mandamus. The Seventh Circuit did not find that what the CFTC did was correct or lawful. Instead, the Seventh Circuit rejected the CFTC's request to close the contempt proceedings entirely, holding that whether the *CFTC* should be held in contempt is for this Court to decide. Dkt. No. 354 at 7. After the entry of the writ of mandamus, this Court terminated the contempt proceedings against the Commissioners, but not the CFTC. The Court also vacated its Consent Order. Dkt. No. 355.

Notwithstanding the vacation of the Consent Order, the CFTC's actions have had real consequences. Defendants have lost the benefit of their bargain in two respects: first, the CFTC made public statements in violation of Paragraph 8; those statements cannot be un-made. Second, with the reinstatement of the lawsuit, Defendants' potential exposure is no longer capped at $16 million as it was under the settlement, and Defendants must incur legal fees in this case, potentially through trial.

Having violated this Court's Order and undermined the settlement, the CFTC now urges this Court to find that it is powerless to hold the CFTC accountable for its prior misconduct. In other words, the CFTC argues that precisely because of its egregious misconduct, it may no longer be held in contempt of court.

The CFTC should not be allowed to benefit from its wrongdoing, and this Court is empowered to do something about it. At a minimum, the Court should find the *CFTC* violated its prior orders and acted in contempt of court. This Court may so declare, enter findings detailing

the nature of the CFTC's wrongful conduct, and enter findings identifying the misrepresentations in the public statements about this Court's Order. *See* Dkt. No. 339 at 27-28. This Court may also order appropriate relief from the *CFTC* so that Defendants do not suffer, and the CFTC does not benefit, from the CFTC's wrongdoing. Whether as a contempt remedy or as a litigation sanction, this Court may limit the claim asserted by the CFTC to the amount of the prior settlement. The Court may hold that the CFTC may recover no more than $16 million in the ongoing litigation. The CFTC could not plausibly claim any prejudice from such an order because its own Commissioners stated the "$16 million penalty and injunctive relief that the Commission has obtained in this Consent Order is as much as the Commission could reasonably expect to obtain if it were to prevail at trial." Dkt. No. 315 Ex. 3 at 1. The Court may also award Defendants the attorneys' fees they incurred while prosecuting the contempt proceedings.

Defendants recognize that the Court may not order punitive or criminal relief, nor can the Court prevent the Commissioners from making further statements. In addition, the Court cannot order a contempt award that violates sovereign immunity. The relief that Defendants seek does none of that. Instead, it defines and discloses the CFTC's wrongful conduct and holds the CFTC responsible for the consequences of its misconduct.

## ARGUMENT

### I. The CFTC Engaged In Misconduct.

Conspicuously absent from the CFTC's "suggestion of mootness" is any defense of its own conduct, which was contemptuous separate and apart from the individual Commissioners' actions.

First, as the Seventh Circuit recognized in its opinion, whether the CFTC's own public statements violated the Consent Order is an open issue for this Court to decide. *See* Dkt. No. 354 at 6-7. These statements include, among other things, the CFTC's incorporation by reference of

the Commissioners' statements regarding the settlement, improper characterization of the settlement amount, improper description of the resolution as "successful," and improper (and false) attribution of Paragraph 8 to the Court, rather than the parties (which, as the Court has observed, also violated the Court's separate order that anything the Court or parties say during its settlement conferences is confidential). *See* Dkt. No. 339 Exs. 2-3 (summarizing improper statements). The CFTC should be held in contempt for its violations of the Consent Order.

Second, the CFTC engaged in misconduct in the course of negotiating and submitting the Consent Order to the Court. In the days leading up to the parties' submission of the agreed Consent Order, the CFTC's lawyers repeatedly asked to remove Paragraph 8 *because* the CFTC's Commissioners did not want to be restricted in what they could publicly say. Those requests demonstrate the CFTC knew that Defendants intended Paragraph 8 to reach such statements. They also communicated to Defendants at the time that the CFTC held the same interpretation as Defendants did; otherwise there would be no need to seek Paragraph 8's removal. After Defendants refused, the Commissioners unanimously approved the settlement and the CFTC submitted the proposed order to the Court, representing to the Court that the parties had agreed on the terms of the proposed order.

That representation was false and may be the subject of these contempt proceedings. Despite the CFTC's previous acknowledgment to Defendants that it believed Paragraph 8 applied to the Commissioners, at the time it submitted the proposed order as "agreed," the agency was in fact preparing to release public statements it knew did not comport with the its previously acknowledged understanding of Paragraph 8. The CFTC even issued a separate statement purporting to explain why the Commissioners were not bound, which would have been unnecessary *unless* the CFTC knew its statements did not comport with its previous admission

that Paragraph 8 applied to the Commissioners. Dkt. No. 315 Ex. 2. Whether the CFTC also misled Defendants during negotiations, when it conceded to holding the same view of Paragraph 8, or whether it changed its view and declined to tell Defendants or the Court before submitting the proposed order as "agreed," the submission of the Order as "agreed" was equally wrong.[1]

Rather than defending its conduct, the CFTC suggests it cannot be held in contempt for violating the Consent Order because the Court has vacated it, or because the Court may have issued the Order "erroneously." Dkt. No. 358 at 1, 3. Neither argument has merit. The CFTC cites no case that holds a party cannot be held in contempt for violating an order in effect at the time of its conduct. Even if it had, that argument is illogical here because the CFTC's own misconduct caused the Court to vacate the Order. *Cf. Caribbean Shippers Ass'n, Inc.* v. *Surface Transp. Bd.*, 145 F.3d 1362, 1365 n.3 (D.C. Cir. 1998) (adopting "chutzpah doctrine"). The single case the CFTC cites in support of its second point holds only that a party cannot be liable for noncompliance with an erroneously issued injunction. Dkt. No. 358 at 3 (citing *United States* v. *Mine Works of Am.*, 330 U.S. 258, 295 (1947)). While that argument might apply with regard to the *Commissioners*, since the Seventh Circuit held Paragraph 8 would be "ineffectual" if it bound them, it has no bearing on the *CFTC*. The Seventh Circuit expressly acknowledged that Paragraph 8 applied to the CFTC and that this Court may determine whether the CFTC's conduct rose to the level of contempt.

## II. There Are Remedies For The CFTC's Misconduct.

This Court is not powerless to hold the CFTC accountable for its conduct. The Court may impose a variety of contempt remedies or litigation sanctions. These include a finding of

---

[1] The CFTC has not submitted an affidavit or anything else to rebut these facts, which have been set out in Defendants' past filings and a sworn declaration. *See, e.g.*, Dkt. Nos. 315, 339.

contempt and public reprimand, a remedy or litigation sanction limiting the CFTC's possible recovery if it prevails at trial, and an award of the attorneys' fees Defendants incurred as a result of the CFTC's misconduct. *See also* Dkt. No. 336 (Court's minute entry identifying other "potential measures or remedies" under consideration in relation to CFTC's conduct).

### A. The Court May Enter a Contempt Finding and Rebuke the CFTC.

While focusing exclusively on the purported lack of a remedy, the CFTC's Suggestion of Mootness ignores the threshold importance of a finding of contempt. Even where Courts are unable or unwilling to impose a financial penalty on the government, they routinely enter a finding of contempt and incorporate a public rebuke to identify the conduct as contemptuous and call the government and its lawyers to account for their misconduct in the public sphere. For example, in *United States* v. *Prince*, 1994 WL 99231 (E.D. N.Y. Mar. 10, 1994), the district court imposed a "public reprimand" on the U.S. Attorney's Office in response to the government's failure to comply with its *Giglio* obligations. *Id.* at *1; *see also Hall* v. *Stone*, 170 F.3d 706, 708 (7th Cir. 1999) (holding federal warden in contempt); *cf. Windham* v. *Graham*, 2008 WL 3833789, at *6 (D.S.C. Aug. 14, 2008) (suggesting request for apology not barred by sovereign immunity); *Birnbaum* v. *United States*, 436 F. Supp. 967, 989 (E.D.N.Y. 1977) ("Assurance by the government that it regrets the injury to plaintiffs will serve to soothe their wounded faith in our democratic institutions, give assurances of non-recurrence in the future, and restore some confidence in our government.").[2]

---

[2] In *Birnbaum*, the Second Circuit reversed the District Court's imposition of the forced apology because plaintiff's tort claim arose under the FTCA, which only provided for monetary relief. 588 F.2d 319, 335 (2d Cir. 1978). That is not the situation here because the CFTC's position throughout these proceedings is that this Court is constrained to granting exclusively non-monetary relief. In any case, Defendants have not sought an apology. *Birnbaum* simply illustrates that the Court may and should issue contempt findings to invoke the "shaming effect that gives them substantial if imperfect deterrent power." *See* Nicholas R. Parrillo, *The Endgame of Administrative Law: Governmental Disobedience and the Judicial Contempt Power*, 131 Harv. L. Rev. 685, 697 (2018).

At a minimum, the Court should enter such an order here, finding the CFTC in contempt, identifying the misrepresentations in the various statements the CFTC published, and admonishing the CFTC and its lawyers for their misconduct. *See* Dkt. No. 339 at 27-28 (identifying specific findings and corrections Defendants seek).

### B. The Court May Impose a Contempt Remedy or Litigation Sanction.

The Court may impose a compensatory contempt remedy or a litigation sanction that limits the CFTC's total possible judgment on all claims to the prior settlement amount, or at the very least bars the CFTC from presenting evidence to support a judgment in excess of that amount. The CFTC deprived Defendants of one benefit of their bargain—its agreement capping their potential liability to the CFTC at $16 million and avoiding additional legal expenses— through its actions which ultimately caused the Court to vacate the settlement. Defendants now must likely spend millions of dollars more in legal and expert fees and face uncertain liability. A sanction that confines the CFTC's potential recovery to the prior settlement amount would compensate Defendants for the loss of at least one benefit of their bargain, namely the elimination of potential liability over a defined sum. Accordingly, if (and only if) the CFTC prevails at trial, the maximum financial judgment available from Defendants on all claims should not exceed $16 million.

Courts often award similar sanctions as litigation remedies against the government for misconduct that prejudices opposing litigants, as long as there is a nexus between the misconduct and the remedy. *See Johnson* v. *Sec'y, Dep't of Health & Human Servs.*, 587 F. Supp. 1117, 1121 (D.D.C. 1984) (deeming facts admitted); *United Med. Supply Co.* v. *United States*, 77 Fed. Cl. 257, 276 (2007) (barring the government from presenting certain evidence); *cf. Barnhill* v. *United States*, 11 F.3d 1360, 1368 (7th Cir. 1993) (noting judgment in favor of injured party is sometimes suitable remedy under court's inherent power). That nexus exists here because the

7

CFTC's misconduct caused Defendants to lose the cap on potential liability and the freedom from future legal expenses.

Moreover, this relief would not unfairly prejudice the CFTC. It would be entirely consistent with the statement Commissioners Berkovitz and Behnam made regarding the settlement they approved. In their August 15, 2019 statement, those Commissioners stated that the "$16 million penalty and injunctive relief that the Commission has obtained in this Consent Order is as much as the Commission could reasonably expect to obtain if it were to prevail at trial." Dkt. No. 315 Ex. 3 at 1. The CFTC made a similar representation in its own press release when it said the $16 million settlement amount was "valued at three times the alleged gain," the purpose of which was to communicate the CFTC had achieved in settlement the maximum financial judgment allowable against Defendants under the Commodity Exchange Act. *Id.* Ex 1; *see also id.* Ex. 2. This Court may simply take the CFTC at its word and limit the claim in this case to the amount of the prior settlement, or at the very least bar the CFTC from presenting evidence that undermines its public statements regarding the amount it could lawfully recover from Defendants if it prevailed.

The CFTC similarly would not suffer prejudice by having its potential recovery so constrained, because the CFTC already agreed to a $16 million settlement.[3] By limiting any potential recovery to $16 million, the Court would ensure Defendants retain some of the benefit of their bargain, while not depriving the CFTC of any benefit it secured in the settlement.

---

[3] This limitation is particularly appropriate given the CFTC's request to remove Paragraph 8 from the settlement and their later actions undermining Paragraph 8.

### C. The Court May Grant Defendants The Attorneys' Fees They Incurred While Prosecuting the Contempt Proceedings.

Attorneys' fees for litigating the contempt issue itself fall outside the category of monetary sanctions that require a sovereign immunity waiver. As the CFTC admits in an asterisk to its "suggestion of mootness," the Seventh Circuit and other courts have awarded attorneys' fees as contempt sanctions against the government. Dkt. No. 358 at 2 n*. In addition to those cases, the D.C. Circuit has described compensation for the fees incurred to bring a contempt motion against the government as "no sanction." See Cobell v. Norton, 334 F.3d 1128, 1145-46 (D.C. Cir. 2003).

Consequently, providing Defendants with the fees they incurred while litigating the contempt issue is not akin to awarding money damages typically barred by sovereign immunity concerns. It simply alleviates Defendants from paying fees generated because of the CFTC's misconduct. Likely for this reason, courts have awarded expenses incurred in contempt proceedings against the government, without finding that such awards are barred by sovereign immunity. See Dkt. No. 339 at 18-19; see also Bernardi v. Yeutter, 951 F.2d 971, 977 (9th Cir. 1991); Cobell v. Babitt, 188 F.R.D. 122, 123 (D.D.C. 1999) (awarding $625,000 in fees for agency's contemptuous violation of discovery order); United States v. Attaluri, 34 F. Supp. 2d 1280, 1283 (N.D. Okla. 1999); Cook v. Rockwell Int'l Corp., 907 F. Supp. 1460, 1468 (D. Colo. 1995); Fish v. Kobach, 294 F. Supp. 3d 1154, 1169 (D. Kan. 2018) (awarding fees for contempt motion against state official); cf. Manriquez v. DeVos, No. 3:17-cv-7210-KS, Dkt. No. 130 at 6 (N.D. Cal. Oct. 24, 2019) (imposing $100,000 civil contempt sanction against Department of Education and Secretary DeVos, a portion of which would cover plaintiffs' counsel's administrative fees).

Furthermore, the Supreme Court has explicitly allowed an award of attorneys' fees as a contempt remedy in the context of state government. In *Hutto* v. *Finney*, the Supreme Court upheld an award of attorneys' fees which would be paid out of state funds and were awarded for state officials' bad faith. 437 U.S. 678, 680, 685, 700 (1978). The Court rejected the argument that state sovereign immunity precluded the award, explaining that compensating an injured party for the other party's noncompliance with a court order is "ancillary to the federal court's power to impose injunctive relief." *Id.* at 691. The Court can award fees here based on the same principles—Defendants should not be penalized because they sought to enforce compliance with a court order, which the CFTC obtained (through misconduct) and then violated anyway.

## CONCLUSION

Defendants respectfully request that the Court reject the CFTC's "suggestion of mootness" and rule on the pending contempt motion against the CFTC. As set forth above, the Court may find the CFTC in contempt and may impose remedies or litigation sanctions that do not implicate sovereign immunity. The contempt request is not moot.

Dated: November 18, 2019

Respectfully submitted,

KRAFT FOODS GROUP, INC. and MONDELĒZ GLOBAL LLC

/s/ Dean N. Panos

Dean N. Panos
J. Kevin McCall
Nicole A. Allen
Thomas E. Quinn
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654-3456
Telephone: (312) 222-9350

Gregory S. Kaufman (*pro hac vice*)
EVERSHEDS SUTHERLAND (US) LLP
700 Sixth St., N.W., Suite 700
Washington, D.C. 20001
Telephone: (202) 383-0325
Email: gregkaufman@eversheds-sutherland.com

*Attorneys for Kraft Foods Group, Inc. and Mondelēz Global, LLC*